IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DAVID HARRIS, et al.,

        Plaintiffs,

v.                                CIVIL ACTION NO. 2:16-cv-11741

BANK OF AMERICA, N.A., et al,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants Bank of America, N.A. ("BANA") and Countrywide Home Loans, Inc.'s ("Countrywide") Motion to Dismiss (ECF No. 5) and Plaintiff David and Michelle Harris's ("Plaintiffs") Notice of Voluntary Dismissal of Count I Against Defendant PennyMac Loan Services, LLC (ECF No. 7).[1]  For the following reasons, the Motion to Dismiss (ECF No. 5) is **GRANTED IN PART** and **DENIED IN PART**.

*I.    FACTUAL BACKGROUND*

This action arises out of a complaint ("the Complaint") Plaintiffs filed in the Circuit Court of Boone County, West Virginia on October 24, 2016.  Defendant Pennymac Loan Services, LLC filed a timely notice of removal on December 5, 2016.  Countrywide and BANA consented to removal on December 22, 2016.  (ECF No. 4.)

---

[1] Pursuant to Plaintiffs' Notice of Voluntary Dismissal under Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, Count I of the Complaint is **DISMISSED WITHOUT PREJUDICE** as against Defendant Pennymac Loan Services, LLC.

In 2007, Plaintiffs located a home they wished to purchase in Madison, West Virginia. (Complaint ¶ 7(a)-(b).) Plaintiffs and the sellers agreed on a purchase price of $175,000 for the home (the "Property"). (Compl. ¶ 7(c).) Plaintiffs then contacted Countrywide about financing, and provided loan application information over the phone. (Compl. ¶ 8(b).) Countrywide arranged for an appraisal of the Property with an appraiser Countrywide knew would provide an inflated appraisal. (Compl. ¶ 9(a).) The appraiser stated that the Property's value was over $175,000, though at the time it only had a fair market value of $127,000. (Compl. ¶ 9(b)-(c).) On May 31, 2007, Plaintiffs executed a Deed of Trust securing a mortgage loan with the Defendants for a principal balance of $172,296, payable over 30 years. (Compl. ¶¶ 11-12(a).) In September 2016, Plaintiffs found out that the actual fair market value of the Property at the time of the loan was only $127,000. (Compl. ¶ 17.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Allegations "must be simple, concise, and direct" and "[n]o technical form is required." Fed. R. Civ. P. 8(d)(1). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a civil complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

2

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss will be granted if, "after accepting all well-pled allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

### III.   DISCUSSION

*A. Unconscionability*

Count I of the Complaint raises claims under the WVCCPA, alleging both that the loan agreement was unconscionable at formation and that Plaintiffs were unconscionably induced into making the agreement.[2]

1. Unconscionability at Formation

The first variety of unconscionability—unconscionability when the contract was made—is well-established in West Virginia law. In the context of this claim, "[t]he doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written."

---

[2] Both claims arise under West Virginia Code § 46A-2-121(a)(1), which prohibits an "agreement or transaction" that is "unconscionable at the time it was made" or "induced by unconscionable conduct such as affirmative misrepresentations, active deceit or concealment of a material fact." W. Va. Code § 46A-2-121(a)(1). Though the Supreme Court of Appeals of West Virginia ("WVSCA") has not definitively held that these are two separate claims, the Fourth Circuit predicted it would do so if it directly faced the question. *See McFarland v. Wells Fargo Bank, N.A.*, 810 F.3d 273, 284 (4th Cir. 2016) ("Though the question is not fully settled under West Virginia law, we believe the West Virginia Supreme Court of Appeals would rule that the WVCCPA authorizes a stand-alone claim for unconscionable inducement, predicated on the process leading up to contract formation and independent of any showing of substantive unconscionability.").

Syl. Pt. 4, *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217, 220 (2012).   This form of unconscionability "requires a showing of both substantive unconscionability, or unfairness in the contract itself, and procedural unconscionability, or unfairness in the bargaining process." *McFarland*, 810 F.3d at 277 (citing *Genesis Healthcare*, 729 S.E.2d at 221); *Genesis Healthcare*, 729 S.E.2d at 227 (noting a contract term is unenforceable only if it is both procedurally and substantively unconscionable, though both need not be present to the same degree).

Defendants' Motion to Dismiss briefing focuses on Plaintiffs' inability to show substantive unconscionability.   Defendants argue that the only allegation in the Complaint potentially related to unfairness in the contract itself is that the loan far exceeded the value of the Property.   A review of the Complaint and Plaintiffs' briefing shows that to be an accurate assessment.   This dooms Plaintiffs' claim, as the Fourth Circuit has held that "a mortgage agreement would not be deemed substantively unconscionable solely because it provides a borrower with more money than his home is worth."   *McFarland*, 810 F.3d at 280 (4th Cir. 2016); *see also Blizzard v. Infinity Home Mortgages, LLC*, No. 2:15-CV-13553, 2016 WL 5329614, at *3 (S.D. W. Va. Sept. 21, 2016) (finding, for the purposes of a motion to remand, that a plaintiff had "no chance of success" on a unconscionability claim where the only allegation of substantive unconscionability was an inflated appraisal).   Given that Plaintiffs must allege both substantive and procedural unconscionability in order to state a claim that the loan agreement was unconscionable when it was made, and they have not alleged sufficient facts relevant to substantive unconscionability, there is no need to consider whether they have sufficiently alleged procedural unconscionability.

Accordingly, to the extent Plaintiffs attempt to assert a claim that the loan agreement was unconscionable at formation, and the Motion to Dismiss seeks dismissal of that claim, the motion

is **GRANTED**. Plaintiffs' claim that the loan agreement was unconscionable at formation is **DISMISSED**.

2. Unconscionable Inducement

The second variety of unconscionability claim—unconscionable inducement—focuses on "the process leading up to the contract formation and [is] independent of any showing of substantive unconscionability." *McFarland*, 810 F.3d 284. Unlike procedural unconscionability in a claim that a contract was unconscionable at formation, which focuses on considerations like the relative positions of the parties, unconscionable inducement requires a showing that the defendant engaged in "affirmative misrepresentations or active deceit." *Id.* at 286.

Plaintiffs only make two allegations which could be relevant to a claim for unconscionable inducement: that Countrywide arranged for a misrepresentation of the value of the Property and that the loan closing "was extremely quick and did not involve an explanation of the documents or terms of the loan or provide Plaintiffs with a reasonable opportunity to understand the transactions, such that they were unaware of the loan terms." (Compl. ¶ 21(c)-(d).) The limited case law on the issue suggests that at least the allegation that Countrywide induced Plaintiffs into entering the loan agreement through Countrywide's misrepresentation of the value of the loan supports their claim for unconscionable inducement. In *Quicken Loans, Inc. v. Brown*, the WVSCA case that the Fourth Circuit heavily relied on in predicting that West Virginia courts would recognize a stand-alone cause of action for unconscionable inducement, the court found no error in the circuit court's finding that "the loan was induced by unconscionable conduct" where the defendant's conduct included "[t]he false promise of refinancing; [i]ntroducing a balloon payment feature at closing; [f]ailing to properly disclose the balloon payment; [f]alsely

5

representing that the plaintiffs were buying the interest rate down; and [n]egligently conducting the appraisal review and failing to realize the highly inflated appraisal from Guida[.]" 737 S.E.2d 640, 657-58 (W. Va. 2012) (alteration in original) (citation omitted). Similarly, this Court found that allegations that a defendant "(1) failed to provide information about all the essential elements of the transaction, including copies of the loan documents; (2) misrepresented the terms of the transaction at closing; and (3) misrepresented the market value of the home" sufficed "to state a possible claim for inducement by unconscionable conduct." *Blizzard*, 2016 WL 5329614, at *4. While the relevant allegations in these cases included misrepresentations other than an inflated appraisal, neither case suggests that such an allegation alone could not support an unconscionable inducement claim.

Accordingly, the Court finds that the Complaint states a claim for unconscionable inducement of a contract against Defendant Countrywide.[3] To the extent the Motion to Dismiss seeks dismissal of this claim against Countrywide, the motion is **DENIED**. However, the Complaint does not allege that BANA made any misrepresentations that could serve as the basis for an unconscionable inducement claim. Accordingly, to the extent the Motion to Dismiss seeks dismissal of this claim against BANA, the motion is **GRANTED**. Plaintiffs' Unconscionable Inducement claim against BANA is **DISMISSED**.

---

[3] Defendants argue that *McFarland* requires Plaintiffs to plead their unconscionable inducement claim with particularity under Rule 9 of the Federal Rules of Civil Procedure. While the Court does not believe *McFarland* requires heightened pleading for unconscionable inducement claims, it is unnecessary to decide, as Plaintiffs' fraud claim based on the same alleged misrepresentation, discussed *infra*, is alleged with sufficient particularity for the purposes of Rule 9. Accordingly, even if Rule 9 applies to unconscionable inducement claims, the Court finds that the claim is sufficiently pled.

*B. Illegal Loan*

Count II of the Complaint alleges that the loan contract was an illegal loan.[4] West Virginia law prohibits the making of a mortgage loan for an amount exceeding the fair market value of the property on the date the latest mortgage loan is made. W. Va. Code § 31-17-8(m)(8). However, a lender can avoid violating this requirement by "rely[ing] upon a bona fide written appraisal of the property made by an independent third-party appraiser, duly licensed or certified by the West Virginia Real Estate Appraiser Licensing and Certification Board and prepared in compliance with the uniform standards of professional appraisal practice." W. Va. Code § 31-17-8(m)(8). Plaintiffs allege that they were offered a mortgage for $172,296 based on a home valuation of $175,000, though the Property actually only had a fair market value of $127,000 at the time of the loan. (Compl. ¶¶ 9(b)-(c), 11.) Plaintiffs also allege that Countrywide arranged for their appraiser to provide an inflated appraisal of the Property. (Compl. ¶ 9(a)-(b).) Countrywide argues that this claim should be dismissed on the grounds that Plaintiffs have inadequately pled the claim, and that the illegal loan statute does not apply in this case because this was Plaintiffs' first mortgage on the Property.

Countrywide argues that Plaintiffs' illegal loan claim is insufficiently pled because the allegations of the Property's fair market value are conclusory. Countrywide notes that the Complaint does not allege any details of this appraisal. Countrywide also argues that the claim fails because there are no allegations with regard to the appraiser who appraised the Property at $175,000. Countrywide points to *Croye v. GreenPoint Mortgage Funding, Inc.*, 740 F. Supp. 2d

---

[4] The Complaint only purports to state an illegal loan claim against Countrywide as the lender and a John Doe holder defendant. (Compl. at 5.) Accordingly, this claim will only be analyzed as against Countrywide for the purposes of the Motion to Dismiss.

7

788 (S.D. W. Va. 2010), in which this Court granted summary judgment against the plaintiffs on an illegal loan claim in part because of their failure to allege that the appraiser's "credentials or her appraisal failed to comply with the statutory requirements."

Plaintiffs have adequately alleged their illegal loan claim. This Court has previously recognized that illegal loan claims "need not set forth the source and methodology for the retroactive valuation at the pleadings stage." *O'Brien v. Quicken Loans, Inc.*, No. 2:12-CV-5138, 2013 WL 2319248, at *7 (S.D. W. Va. May 28, 2013); *see also Robinson v. Quicken Loans Inc.*, No. CIV.A. 3:12-0981, 2012 WL 3670391, at *3 (S.D. W. Va. Aug. 24, 2012) ("Although Plaintiff does not give the details of the 2011 retrospective valuation, the Court accepts well-pled facts at this stage as true: Defendant may seek discovery on the adequacy of Plaintiff's 2011 valuation at a later phase."). Plaintiffs have alleged that they were loaned $172,296 for a house with a fair market value of $127,000. These are factual allegations entitled to the presumption of truth at the pleading stage, not legal conclusions. Nor is the claim insufficiently pled with regard to the appraisal for $175,000. While the Complaint does not allege specifics with regard to that appraiser's credentials or methods, it alleges that Countrywide arranged for and was provided with an inflated appraisal. Section 31-17-8(m)(8) provides that a lender may comply with its requirements by relying on a "bona fide written appraisal," but an intentionally inflated appraisal would not qualify. *See, e.g.*, *Fabian v. Home Loan Ctr., Inc.*, No. 5:14-CV-42, 2014 WL 1648289, at *4 (N.D. W. Va. Apr. 24, 2014) (recognizing that an intentionally inflated appraisal is not made in good faith and thus is not "bona fide").

Countrywide also argues that Plaintiffs' illegal loan claim must be dismissed because section 31-17-8(m)(8) does not apply to the first mortgage loan on a house. Countrywide points

8

to this Court's holding that "the statute does not apply when a borrower takes out her first mortgage loan and the principal balance of that loan exceeds the fair market value of the property at the time the loan is made" because "the plain language of the statute requires the existence of other mortgage loans before it will apply." *Skibbe v. Accredited Home Lenders, Inc.*, No. 2:08-CV-01393, 2014 WL 2117088, at *6 (S.D. W. Va. May 21, 2014). However, the WVSCA recently considered this argument and rejected the reasoning of *Skibbe*, holding that "[t]he provisions of West Virginia Code § 31-7-8(m)(8) apply to any primary or subordinate mortgage loan that exceeds the fair market value of the property at the time the loan is made, either singly, in the case of a first or consolidation mortgage loan, or in combination with any outstanding balances of any existing loan." Syl. Pt. 5, *Quicken Loans, Inc. v. Walters for Walters*, No. 16-0298, 2017 WL 2626559 (W. Va. June 15, 2017).

Accordingly, because Plaintiffs' illegal loan claim is sufficiently pled and the relevant statute applies to the facts of the case, to the extent Countrywide seeks dismissal of Count II, the motion is **DENIED**.

*C. Fraud*

Count III of the Complaint alleges that Countrywide fraudulently used an inflated appraisal to induce Plaintiffs into executing the loan contract.[5] Under West Virginia law, "[t]he essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied

---

[5] The Complaint only purports to state a fraud claim against Countrywide as the lender and a John Doe holder defendant. (Compl. at 6.) Accordingly, this claim will only be analyzed as against Countrywide for the purposes of the Motion to Dismiss.

9

on it." Syl. Pt. 5, *Kidd v. Mull*, 595 S.E.2d 308 (W. Va. 2004) (citations and quotations omitted). Countrywide argues that Plaintiffs have insufficiently pled this claim under the heightened standards of Rule 9(b) of the Federal Rules of Civil Procedure, and that even if the claim is sufficiently pled, it is time-barred under the applicable statute of limitations.

1. Failure to State a Claim

Rule 9(b) requires that a party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Fourth Circuit has explained that "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)). The Fourth Circuit elaborated in *Harrison* that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*

Plaintiffs allege the following as relevant to their fraud claim: (1) the time of the alleged fraud was in early 2007, when the appraisal and loan were made, (2) the appraisal took place at the Property Plaintiffs eventually purchased, (3) the false representation was the appraisal of the Property for over $175,000 when the Property had a fair market value of $127,000, (4) the false representation was made by an appraiser Defendant Countrywide specifically sought out to provide an inflated appraisal, and (5) Plaintiffs relied on this misrepresentation as to the value of

10

the Property in entering the loan agreement. (Compl. ¶¶ 7-11, 26-31.) The Fourth Circuit has found pleadings with a similar level of specificity to be sufficient under Rule 9(b) to state a claim for fraud. *See McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013). Accordingly, the Court finds that Plaintiffs have alleged sufficient facts to state a claim for fraud against Countrywide.

Countrywide also argues that the Complaint does not state a claim for fraud because Plaintiffs could not have reasonably relied on the allegedly inflated appraisal. Countrywide asserts that Plaintiffs' alleged reliance is "specious" because appraisals are for the benefit of the lender and an inflated appraisal does not harm the borrower. However, while a lender may face risks from insufficient collateral, the Fourth Circuit has recognized that an inflated appraisal can harm a borrower. *See McFarland*, 810 F.3d at 280-81 (noting that while an under-collateralized loan may not be substantively unconscionable, "consumers may be harmed, sometimes grievously, when they take on more mortgage debt than their homes are worth"). Countrywide also argues that Plaintiffs' reliance on the appraisal Countrywide arranged was not justified because Plaintiffs could have performed further investigation on their own or negotiated for a lower price. The Fourth Circuit rejected a very similar argument in *McCauley*, noting "[a] lender that informs a borrower about how much her property is worth, whether required to do so or not, is under an obligation not to misrepresent that value." *McCauley*, 710 F.3d at 559.

Accordingly, the Court finds that Plaintiffs have adequately pled a claim for fraud.

11

2. Statute of Limitations

Countrywide argues that, even if Plaintiffs have sufficiently stated a claim for fraud, such a claim is barred by the statute of limitations. The WVSCA has provided a five-step test to determine if a claim is time-barred:

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

Syl. Pt. 5, *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009). The Fourth Circuit has also noted that as an affirmative defense, the issue of whether a claim is time-barred is not usually appropriate for a motion to dismiss, except in the "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

In West Virginia, common law fraud claims are governed by a two-year statute of limitations. W. Va. Code § 55-2-12; *see Alpine Prop. Owners Ass'n, Inc. v. Mountaintop Dev. Co.*, 365 S.E.2d 57, 66 (W. Va. 1987). Under the *Dunn* analysis, the Court next addresses the accrual date for the claim and the potential applicability of the discovery rule. *See Dunn*, 689 S.E.2d at 265. The "general rule" in West Virginia is that "'[t]he statute of limitations . . . begins

12

to run when the right to bring an action . . . accrues.'" *Roberts v. W. Va. Am. Water Co.*, 655 S.E.2d 119, 125 (W. Va. 2007) (quoting Syl. Pt. 1, in part, *Jones v. Trustees of Bethany College*, 351 S.E.2d 183 (W. Va. 1986)). However, "under the discovery rule, the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim." Syl. Pt. 2, *Stuyvesant v. Preston Cty. Comm'n*, 678 S.E.2d 872 (W. Va. 2009) (citation omitted). "[W]hether a plaintiff 'knows of' or 'discovered' a cause of action is an objective test." Dunn, 689 S.E.2d at 265. "The plaintiff is charged with knowledge of the factual, rather than the legal, basis for the action." *Id.* "This objective test focuses upon whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action." *Id.*

According to the Complaint, Plaintiffs discovered the allegedly fraudulent appraisal in September 2016. (Compl. ¶ 17.) Plaintiffs filed this action in state court on October 24, 2016, making their fraud claim timely under a straightforward application of the discovery rule. However, Countrywide argues that through reasonable diligence the Plaintiffs should have discovered the alleged discrepancy in the 2007 appraisal and the actual value of their home much sooner. Countrywide believes that Plaintiffs should have made this discovery sometime between the May 2007 origination of the loan and October 2014. Specifically, Countrywide asserts that Plaintiffs should have been put on notice by a discrepancy in the property's appraised value and assessed tax value.

The Court finds that this determination is inappropriate for the motion to dismiss stage. While it is possible that Plaintiffs should have discovered the alleged fraud earlier than they did, when they should have done so is a factual inquiry to which the answer is not apparent from the

face of the Complaint. Accordingly, the Court cannot at this time find that Plaintiffs' fraud claim is time-barred. To the extent the Motion to Dismiss seeks dismissal of Count III for failure to state a claim or failure to comply with the statute of limitations, the motion is **DENIED**.

### IV.  CONCLUSION

For the foregoing reasons, Defendants BANA and Countrywide's Motion to Dismiss (ECF No. 5) is **GRANTED** insofar as it requests dismissal of Plaintiffs' Unconscionability at Formation claim against Countrywide and BANA and their Unconscionable Inducement claim against BANA and **DENIED** insofar as it requests dismissal of Plaintiffs' Unconscionable Inducement, Illegal Loan, and Fraud claims against Countrywide.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:  July 17, 2017

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE